GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California
SOPHIA WHITING
CARMEN SMARANDOIU
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:       Sophia_Whiting@fd.org


Counsel for Defendant Powell Jr.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BENNIE POWELL JR.,<br><br>Defendant. | **Case No.:** CR 21–00070 RS<br><br>**DEFENDANT BENNIE POWELL JR.'S MOTION TO SUPPRESS**<br><br>**Court:** Videoconference<br>**Hearing Date:** January 3, 2022<br>**Hearing Time:** 1:00 p.m. |

PLEASE TAKE NOTICE that on January 3, 2022, or as soon thereafter as counsel may be heard, Defendant Bennie Powell Jr., by and through undersigned counsel, will move the Court for an order suppressing evidence obtained via unlawful searches and seizures undertaken by law enforcement officers on or about November 22, 2019. This motion is based on the Constitution of the United States, all relevant case law and statutory authority, the following memorandum of points and authorities, any reply memorandum, and any oral argument made at the motion hearing.

Should any disputed issue of material fact arise with respect to this motion, Mr. Powell respectfully requests that the Court order an evidentiary hearing.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

I.    U.S. Postal Inspection Service investigates Timothy Sears after cashing allegedly "counterfeit" U.S. Postal Service Money Orders at Westamerica Bank. ........................1

II.   A California Superior Court judge issues a search warrant for 1001 Spyglass Parkway. 2

ARGUMENT ........................................................................................................................3

I.    The search warrant is devoid of probable cause of the alleged offenses. ........................3

      A.    No probable cause of forgery.............................................................................4

      B.    No probable cause of mail theft, possession of stolen property, or identity theft. 6

      C.    No probable cause of conspiracy. .....................................................................7

II.   The search warrant is insufficiently particular and fatally overbroad. ...........................8

      A.    The provision allowing the search of "any vehicles" is overbroad. ....................9

      B.    The electronics provisions is insufficiently particular and overbroad. ...............11

      C.    The provision allowing the seizure of "counterfeit money orders or Postal money order stock" is insufficiently particular.................................................15

CONCLUSION....................................................................................................................16

# TABLE OF AUTHORITIES

**Federal Cases**

*Giordenello v. United States,*
   357 U.S. 480 (1958) ............................................................................................. 8

*Greenstreet v. Cty. of San Bernardino,*
   41 F.3d 1306 (9th Cir. 1994) ............................................................................. 10

*Illinois v. Gates,*
   462 U.S. 213 (1983) ............................................................................................. 3

*Maryland v. Garrison,*
   480 U.S. 79 (1987) ............................................................................................... 1

*Millender v. County of Los Angeles,*
   620 F.3d 1016 (9th Cir. 2010). .................................................................... 15, 16

*People v. Thompson,*
   138 Cal. Rptr. 603 (Cal. App. 1977) ................................................................ 15

*Riley v. California*
   134 S. Ct. 2473 .................................................................................................. 12

*United States v. Becerril, No. 18-CR-00288-PJH-1,*
   2019 WL 162728 (N.D. Cal. Jan. 10, 2019) ..................................................... 10

*United States v. Cervantes,*
   703 F.3d 1135–40 (9th Cir. 2012) ....................................................... 5, 6, 13, 15

*United States v. Cotterman,*
   709 F.3d 952 (9th Cir. 2013) ............................................................................. 12

*United States v. Davis,*
   530 F.3d 1069 & n.3 (9th Cir. 2008) ................................................................. 11

*United States v. Fletcher, No. 16-20336,*
   2016 WL 6277160 (E.D. Mich. Oct. 27, 2016) ............................................... 10

*United States v. Fuccillo,*
   808 F.2d 173 (1st Cir. 1987) ............................................................................. 15

*United States v. Gourde,*
   440 F.3d 1065 (9th Cir. 2006) (en banc) ............................................................ 3

*United States v. Hay,*
   231 F.3d 630 (9th Cir. 2000) ............................................................................. 14

*United States v. Hendricks,*
   743 F.2d 653 (9th Cir. 1984) ............................................................................. 10

*United States v. Hillyard*,
  677 F.2d 1336 (9th Cir. 1982) ................................................................ 5, 15-16

*United States v. Holzman*,
  871 F.2d 1496 (9th Cir. 1989) .................................................................. 9, 11, 12

*United States v. Kow*,
  58 F.3d 423 (9th Cir. 1995) ........................................................................... 16

*United States v. Lacy*,
  119 F.3d 742 (9th Cir. 1997) .......................................................................... 14

*United States v. Mora*,
  989 F.3d 794 (10th Cir. 2021) ........................................................................ 13

*United States v. Opoku, No. 4:20-CR-381*,
  2021 WL 3748260 (S.D. Tex. Aug. 23, 2021) ("The Court does not find the generalization that
  violent gang members "use their cell phones to communicate with others about the planning and
  execution of crimes" sufficient to create a nexus with the cellphone's "call history," "emails,"
  "contact information," and "voicemails" . . . .") ........................................ 14-15

*United States v. Payton*,
  573 F.3d 859 (9th Cir. 2009) ......................................................................... 12

*United States v. Rabe*,
  848 F.2d 994 (9th Cir. 1988) ........................................................................... 3

*United States v. Schesso*,
  730 F.3d 1040 (9th Cir. 2013) ....................................................................... 12

*United States v. SDI Future Health, Inc.*,
  568 F.3d 684 (9th Cir. 2009) ........................................................................ 9, 12

*United States v. Spilotro*,
  800 F.2d 959 (9th Cir. 1986) ......................................................................... 8, 9

*United States v. Underwood*,
  725 F.3d 1076 (9th Cir. 2013) ............................................................... *passim*

*United States v. Weaver*,
  99 F.3d 1372 (6th Cir. 1996) .......................................................................... 13

*United States v. Weber*,
  923 F.2d 1338 (9th Cir. 1990) ................................................................. 8, 9, 14

*Wong Sun v. United States*,
  371 U.S. 471 (1963) ..................................................................................... 1, 2

**Federal Statutes**

18 U.S.C. 1349 ................................................................................................ 3

18 U.S.C. § 1028A ........................................................................................... 3

**State Statutes**

Cal. Pen. Code § 182(a)(1) ............................................................................. 7

Cal. Pen. Code § 459 ..................................................................................... 4

California Penal Code Sections 496(a) ........................................................ 2

**INTRODUCTION**

The Fourth Amendment prohibits the issuance of any warrant except "upon probable cause" and "particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

The search warrant at issue here, however, allowed precisely the kind of disfavored wide-ranging exploratory searches based on nothing more than conclusory statements and general claims of expertise. Because the search warrant plainly lacked probable cause, was insufficiently particular, and is overbroad, the Court should order suppression of the evidence obtained, both directly and indirectly, from these unlawful searches. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

**BACKGROUND**

**I.    U.S. Postal Inspection Service investigates Timothy Sears after cashing allegedly "counterfeit" U.S. Postal Service Money Orders at Westamerica Bank.**

According to the affidavit in support of the November 21, 2019, search warrant, the events leading up to the issuance of the warrant began on November 14, 2019.[1] *See* Declaration of Sophia Whiting, Ex. A (Search Warrant, "SW"). On that day, a person "negotiated" five "counterfeit" U.S. Postal Service money orders at Westamerica's Vallejo branch for $1,000 each. SW ¶ 6. On November 18, a Loss Investigator for Westamerica Bank, Donna Cory, emailed United States Postal Inspector Tyler Sherman copies of the five money orders, the serial numbers for the money orders, and eleven images captured from the bank's surveillance footage of the person who "negotiated" the orders. *Id.* ¶ 7. She explained to Sherman that she called the U.S. Postal Service Money Order Verification unit and was told the money orders were "not valid." *Id.*

The following day, November 19, Sherman consulted with Tammira Day, another Westamerica Loss Investigator, who stated that the "same subject" also "tried to cash" three money orders at

---

[1] All statements of facts in this motion are drawn from the search warrant application and other documents prepared by law enforcement. Mr. Powell's recitation of the contents of those documents is not an admission of their veracity.

Westamerica's Fairfield branch. *Id*. ¶ 8. Day emailed Sherman two images of the person "cashing" the money orders. *Id*. According to the affidavit, "[i]t appears to be the same subject from November 14, 2019 at the Westamerica Bank Vallejo Branch." *Id*.

Day also provided Postal Inspectors with information from the person's bank account application. *Id*. at ¶ 9. According to the application, the person's name was Timothy Sears, he lived at 1001 Spyglass Parkway, Vallejo, CA 94591, had a Georgia driver's license, and worked for Cutz (Barbershop). *Id*. The person "informed the bank that he was a barber and receives Money Orders as payments for haircuts." *Id*.

Also on November 19, 2019, Sherman spoke with the Property Manager of the "Seabridge at Glen Cove" at 1 Spyglass Parkway, Vallejo, California, "to seek information regarding tenants living at 1001 Spyglass Parkway." *Id*. ¶ 10. The Property Manager, who was shown an image supplied by Westamerica of Timothy Sears, confirmed that he lived in the complex.[2] *Id*. Sherman researched Postal indices and found "a Timothy M. Sears was receiving mail at 1001 Spyglass Parkway Vallejo." *Id.* ¶ 11.

## II.   A California Superior Court judge issues a search warrant for 1001 Spyglass Parkway.

Based on this information, Postal Inspector Sukhdeep Singh submitted an application for a search warrant on November 21, 2019. Singh had been a postal inspector for three and a half years and was then-assigned to the San Francisco Division Mail Theft and External Crimes Team, although it is unclear when his assignment started. *Id*. ¶ 4. The only relevant training he lists was a "twelve-week basic training course" that "included training and investigation of counterfeiting documents and identity theft stemming from the theft of United States Mail." *Id*.

Singh stated that, based on his – seemingly limited – training and experience, the above-facts established probable cause "to believe that [the] location [to be searched was] being used to house, conceal and facilitate" violations of California Penal Code Sections 496(a), Possession of Stolen Property; 495, Burglary – Commercial; 530.5(a), Identity Theft; 475(a), Forgery; and 182(a)(1), Conspiracy to Commit Crimes. *Id*. ¶¶ 3, 13.

---

[2] The Seabridge at Glen Cove complex has 156 units total according to online records.

The same day, a California Superior Court judge issued a search warrant for 1001 Spyglass Parkway; any vehicles parked at the premises or "under the dominion and control of subjects encountered, which can be identified as being associated with this location"; a white or silver BMW used by the person who identified himself as Timothy Sears to leave Westamerica on November 14, 2019; the person of the man who identified himself as Timothy Sears; and [a]ny computers, cellular phones or other electronic media devices seized from the residence." SW Attach. A.

Postal Inspectors and the Vallejo Police Department executed the search warrant on November 22, 2019. *See* Whiting Dec., Ex. B (Search Warrant Return and Inventory). The officers seized numerous items, including a red iPhone belonging to Shanani Bardell, Mr. Powell's girlfriend, *id*. at 4; various bank records, US mail, phone statement, and other documents in her name; and an iPhone and various documents from an "Infinity [sic] SUV," also belonging to Ms. Bardell. *Id*. at 1, 4-5.

On November 19, 2020, a criminal complaint charged Mr. Powell with conspiracy to commit bank fraud, 18 U.S.C. 1349 (along with two co-defendants) and aggravated identity theft, 18 U.S.C. § 1028A. Dkt. No. 1. Mr. Powell waived indictment. Dkt. No. 54. He now files the instant motion to suppress the fruits of the searches conducted pursuant to the November 21, 2019, search warrant.

## ARGUMENT

### I.   The search warrant is devoid of probable cause of the alleged offenses.

Before a search warrant may be issued, the government must "establish by sworn evidence presented to a magistrate that probable cause exists to believe that an offense has been committed and that items related to that offense . . . will be found on the premises sought to be searched at the time the warrant is issued." *United States v. Rabe*, 848 F.2d 994, 997 (9th Cir. 1988); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983).

"A reviewing court should find that probable cause is not met when the issuing judge lacked a substantial basis for concluding that probable cause existed." *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (citations and quotations omitted). All information necessary to show probable cause "must be contained within the four corners of a written affidavit given under oath." *United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006) (en banc) (quotation and citation omitted).

Critically, the magistrate's issuance of a warrant "cannot be a mere ratification of the bare conclusion of others." *Gates*, 462 U.S. at 239. Therefore, "[c]onclusions of the affiant unsupported by underlying facts cannot be used to establish probable cause." *Underwood*, 725 F.3d at 1081. Instead, "[a]n affidavit must recite underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions; it is these facts that form the central basis of the probable cause determination." *Id.* Contrary to these basic rules, Inspector Singh's affidavit rests heavily on conclusory allegations and conjecture, and is utterly devoid of probable cause.

### A.    No probable cause of forgery.[3]

Singh's affidavit is remarkable in its brevity. His Statement of Probable Cause comprises just thirteen sentences, which allege, in the relevant part, that on November 18, 2019, Westamerica Loss Investigator Cory told postal inspector Sherman that a man who identified himself as Timothy Sears in his bank application "negotiated" five "counterfeit" U.S.P. Money Orders, each for $1,000, at the bank's Vallejo branch. SW ¶¶ 6, 9. Cory explained to Sherman that she called the U.S. Postal Service Money Order Verification Unit and was told the Money Orders were "not valid." *Id.* ¶ 7. She also provided Sherman with the serial numbers for the five money orders. *Id.* The next day, Westamerica Loss Investigator Day told Sherman that the man "tried to cash" three additional money orders at the bank's Fairfield branch on an unspecified date. *Id.* ¶ 8.

The affidavit's third and fourth-hand allegations that the five money orders were "counterfeit" or "not valid" are unsupported *conclusions* that "cannot be used to establish probable cause." *Underwood*, 725 F.3d at 1081. In *Underwood*, for instance, the Ninth Circuit held that the affiant's statement that "[b]ased on other seizures in this investigation, I believe the crates contained approximately 260,000 pills of MDMA," was a "bare conclusion" because the affidavit did not include "an explanation of the nature of the seizures—for example, what was seized and where the

---

[3] Singh also alleges probable cause of burglary, which requires entry into a building "with intent to commit grand or petit larceny or any felony." Cal. Pen. Code § 459. A showing of probable cause of burglary, then, hinges on whether the man entered the Westamerica Bank's Vallejo branch with the intent to commit forgery or identity theft. Because the affidavit fails to support probable cause of either, it also fails to support probable cause of burglary.

seizures took place"—that is, "no underlying facts about the seizures from which the issuing judge could draw his or her own conclusion about how, if at all, the seizures indicate that the two crates contained ecstasy." *Id*. at 1083; *see also id*. at 1084 (allegations in the affidavit based on "other seizures," "intercepted conversations over TT # 1–4, # 6–7" or "my surveillance observations," were "essentially conclusory statements" because they were unsupported by underlying facts and "the issuing judge would have to trust [the agents] that the information from the intercepted conversations and surveillance supports their conclusions."). Similarly, in *United States v. Cervantes*, the Ninth Circuit held that a detective's statement that a certain residence was a "suspected narcotics stash house" was conclusory because he "failed to provide any underlying facts as to why he, or any other officers, suspected the house," notwithstanding his training and experience. 703 F.3d 1135, 1139–40 (9th Cir. 2012) ("Conclusory statements and a general claim of expertise will not suffice.").

Here, Cory's and the Verification Unit's claims that the money orders were "counterfeit" or "not valid" are not supported by any "underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions" regarding those money orders. *Underwood*, 725 F.3d at 1081. The affidavit does not provide any background information about money orders, "counterfeit" or not, it does not explain in what ways the five money orders were "counterfeit," nor how Cory determined that they were "counterfeit." *Compare United States v. Hillyard*, 677 F.2d 1336, 1341 (9th Cir. 1982) (affidavit set forth probable cause of possession of stolen vehicles where affiant identified prior ownership and, based on information from two confidential informants set forth in the affidavit, "averred that Hillyard concealed the thefts by grinding or altering identification numbers on the vehicles and by substituting other identification numbers."). Similarly, the affidavit does not explain how the Verification Unit concluded that the money orders were "not valid," whether "not valid" is the same or different same as "counterfeit," nor what "not valid" even means in this context. *See Underwood*, 725 F.3d at 1084 (faulting affidavit for not explaining, "[f]or example, . . . who was being surveilled, what was observed, whom the intercepted conversations were apparently between, or what was said during those conversations," and merely offering "conclusory allegations.").

Furthermore, these conclusory allegations were made by unsworn third parties about whom the judge knew absolutely nothing except their name or title. The court did not know, because the

affidavit did not explain, what a Loss Investigator's responsibilities are, what are the qualifications required for such a position, and whether Cory herself met those requirements or not. The court also did not know what the Verification Unit does, how it determines when a money order is "not valid," the qualifications required to work there, or anything at all about the specific person whom Cory called about the five money orders. Thus, the court lacked any information that would have allowed it to assess the reliability of these third-hand sources, in addition to lacking any information that would have allowed it to assess the soundness of their conclusions.

Thus, as in *Underwood*, Singh failed to provide the judge with underlying *facts* that would have allowed him to draw his own conclusions regarding the five money orders, and instead asked that the judge trust the conclusions of unsworn third parties. Therefore, Cory's conclusory statements, including her reporting of her conversation with the Verification Unit, "cannot be used to establish probable cause." *Id*.

Finally, the affidavit's claim that the man tried to cash three additional money orders on an unspecified date adds nothing to the probable cause inquiry. *See* SW ¶ 8. The affidavit does not claim that the three money orders were in any way suspect (let alone provide any underlying facts), nor does it explain why the man did not cash them. *See id*. This "benign" fact, when coupled with the unsupported conclusory assertions that the five money orders were "counterfeit" or "not valid," is plainly insufficient to establish probable cause of forgery. *See Cervantes*, 703 F.3d at 1140 (where the detective's declaration that the defendant "did not take a direct route to his location" provided "no further indication as to why Cervantes's driving behavior should be considered suspicious," his "benign travel tactics, when coupled with [the detective]'s conclusory statement about the box in Cervantes's possession, are insufficient to establish probable cause.").

## B. No probable cause of mail theft, possession of stolen property, or identity theft.

Singh also claimed that there was probable cause of possession of stolen property and identity theft. SW ¶ 13. In the section titled Training and Experience Regarding Mail and Identity Theft, he claims that, in his limited "training and experience on the mail theft team" and from information from other law enforcement officers, he knows that "[p]ersons who steal mail are often involved in . . .

identity theft crimes" and that "these individuals usually steal mail looking for . . . checks, access devices, other personal identifying information, . . . and identification documents that they can use to fraudulently obtain money and items of value." SW ¶ 12(c).

The affidavit, however, utterly fails to establish that the man committed mail theft. Indeed, it does not even identify what exactly it believes that the man stole (let alone from the mail): some or all of the money orders? The driver's license? Something else? The "Statement of Probable Cause" does not claim theft of any kind. While it makes conclusory allegations that the five money orders were "counterfeit" or "not valid," it does not claim (let alone provide supporting facts) that they were stolen (from mail or anywhere else). Nor does it claim that the driver's license was stolen (from mail or anywhere else).

Singh's pure speculation of mail theft is the only basis for his further claim of identity theft. *See* SW ¶¶ 12(c), 13. Indeed, the Statement of Probable Cause does not claim that the man was not Timothy Sears, as he identified himself in his bank account application. *See* SW ¶ 9.

If anything, the affidavit *confirms* the man's identity. On November 19, 2019, Sherman spoke with the property manager of Seabridge at Glen Cove at 1 Spyglass Parkway in Vallejo, and sought information "regarding tenants residing at 1001 Spyglass Parkway," SW ¶ 10, which was the man's address on his bank application. *See* SW ¶ 9. The property manager was shown "an image supplied by Westamerica bank of Timothy Sears and confirmed that he lived in the complex." SW ¶ 10. The same day, Sherman "researched Postal indices and found a Timothy M. Sears was receiving mail a[t] 1001 Spyglass Parkway." SW ¶ 11. In other words, all information available to Singh confirmed that the man was Timothy Sears, and any suggestion to the contrary was rank speculation.[4] The affidavit is devoid of probable cause of identity theft, mail theft, or possession of stolen property.

### C. No probable cause of conspiracy.

Finally, the affidavit claims probable cause of conspiracy to commit crimes. A conspiracy, of course, requires at least two coconspirators. *See* Cal. Pen. Code § 182(a)(1). Yet the affidavit's only

---

[4] On the other hand, if there was probable cause to believe the man was *not* Timothy Sears—though none was provided—then that would undermine the contention that there would be evidence of any crimes at the residence of Timothy Sears.

references to conspiracy are Singh's oblique claim, in the "Training and Experience" section, that "[i]ndividuals who participate in [mail and identity theft] schemes communicate with co-conspirators" by various means. SW ¶ 12(f).

But nowhere does the affidavit establish a foundation for conspiracy. As explained above, it does not furnish probable cause that the man committed forgery, or mail or identity theft. Furthermore, it does not proffer any facts suggesting that the man conspired with a specific person or even that he was part of a conspiracy with unidentified people; in fact, it does not reference any another person associated in any way with the man. Singh does not even claim that, in his experience, persons suspected of any of the alleged crimes usually are part of a conspiracy. Thus, it is plain that Singh's references to "co-conspirators" and conspiracy, just like the references to mail theft and identity theft, were "rambling boilerplate recitations designed to meet all law enforcement needs" and that "the "expert" portion of the affidavit was not drafted with the facts of this case or this particular defendant in mind." *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990).

In sum, the entire affidavit reveals utter disregard for an affiant's duty to provide the magistrate with "underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions." *Underwood*, 725 F.3d at 1081, and the magistrate duty's corresponding duty "'to judge for himself the persuasiveness of the *facts* relied on by a complaining officer to show probable cause.'" *Id*. (quoting *Giordenello v. United States*, 357 U.S. 480, 486 (1958); Ninth Circuit's emphasis)). Because the affidavit is plainly devoid of probable cause of any criminal offense, the search warrant is invalid and all evidence obtained as a result of it must be suppressed.

**II.   The search warrant is insufficiently particular and fatally overbroad.**

Even assuming *arguendo* that the warrant was supported by probable cause of some criminal activity, it lacked specificity. "This requirement prevents general, exploratory searches and indiscriminate rummaging through a person's belongings." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). "It also ensures that the magistrate issuing the warrant is fully apprised of the scope of the search and can thus accurately determine whether the entire search is supported by probable cause." *Id*. Specificity encompasses two related but distinct requirements: particularity and

breadth. *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009); *Weber*, 923 F.2d at 1342.

First, the warrant "must describe the place to be searched or things to be seized with sufficient particularity, taking account of the circumstances of the case and the types of items involved." *Weber*, 923 F.2d at 1342; *see also SDI Future Health, Inc.*, 568 F.3d at 702 ("Particularity is the requirement that the warrant must clearly state what is sought.") (emphasis added). "The Supreme Court has stated on numerous occasions that the warrant must leave the executing officers with no discretion as to what items are to be seized." *United States v. Holzman*, 871 F.2d 1496, 1508 (9th Cir. 1989), abrogated on other grounds by *Horton v. California*, 496 U.S. 128 (1990)).

Second, the warrant "must be no broader than the probable cause on which it is based." *Weber*, 923 F.2d at 1342; *see also SDI Future Health, Inc.*, 568 F.3d at 702 ("Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.") (internal quotations omitted).

When determining whether a warrant's description is sufficiently specific to meet these Fourth Amendment requirements, courts consider: (1) whether probable cause existed to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. *Spilotro*, 800 F.2d at 963.

###### A.    The provision allowing the search of "any vehicles" is overbroad.

The search warrant authorized the search of five categories of "places," including "[a]ny vehicles parked at the premises, or any vehicles under the dominion and control of subjects encountered, which can be identified as being associated with this location, by keys, documents, statements or DMV records. . . ." SW Attach. A. ¶ 2. Separately, the warrant authorized the search of "[a] white or silver BMW bearing unknown plate number as shown on the photograph depicted [in Attachment A], and used by the subject who identified himself as 'Timothy Sears' to leave Westamerica Bank on November 14, 2019." *Id.* ¶ 3. "The suspect vehicle [was] believed to be parked at 1001 Spyglass Pkwy, Vallejo, CA 94591." *Id.*

The "any vehicle" provision is unsupported by probable cause. "A search warrant designating more than one person or place to be searched must contain sufficient probable cause to justify its issuance as to each person or place named therein." *Greenstreet v. Cty. of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir. 1994). Here, to the extent that probable cause to search any car existed, it was limited to the light-colored BMW sedan that the man used on November 14, 2019 at Westamerica Bank in Vallejo.

The affidavit does not include any information suggesting that the man owned or used any other cars that he parked at the premises,[5] nor any case-specific information that would support the conclusion that evidence or fruits of the alleged crimes would be found in such other cars used by the man. *See United States v. Hendricks*, 743 F.2d 653, 654 (9th Cir. 1984) (nexus to residence missing where "the business premises were the only place that was linked to past illegal activity, the residence not at all"); *United States v. Fletcher*, No. 16-20336, 2016 WL 6277160, at *4 (E.D. Mich. Oct. 27, 2016) (no probable cause to search cars for evidence of identity theft and firearm offenses where "it is undisputed from the affidavit that Defendant had access to these cars and used them," but "there are no supporting facts suggesting that any evidence would be found in these cars."). Singh did not even claim that, in his limited training and experience, evidence or fruits of any of the alleged crimes are usually stored in the suspects' cars. *Compare United States v. Becerril*, No. 18-CR-00288-PJH-1, 2019 WL 162728, at *1 (N.D. Cal. Jan. 10, 2019) (nexus to suspect's vehicle existed where USPS employee stole Costco reward certificates and Costco Cash Card from mail, was seen wearing his postal uniform while redeeming certificates, and used stolen Costco Cash Cards to pay for gas at Costco, and affiant offered expert opinion that mail thieves will generally store the stolen mail in their personal vehicles and/or at their residence, and that mail thieves commonly carry and transport the fruits and instrumentalities of their crimes in their vehicles).

Similarly, there is no nexus between any of the alleged offenses and any vehicles of any "subjects encountered." The affidavit does not even provide a foundation for concluding that the man

---

[5] The Property Manager at the Seabridge apartment complex could presumably have provided such information, if asked. Singh or Sherman could have also searched DMV records and interviewed neighbors.

1    used the vehicles of any "subjects encountered" (let alone that he did so in connection with his

2    alleged offenses) or that any "subjects encountered" are his co-conspirators (let alone that any co-

3    conspirators would use their cars in connection with the alleged offenses). *See United States v. Davis*,

4    530 F.3d 1069, 1084 & n.3 (9th Cir. 2008) (search warrant for property, which also provided for a

5    search of "all other persons or occupants found to be keeping, visiting, or frequenting" the premises

6    of the property, did not justify search of brother of property owner where the warrant "did not

7    mention [brother] by name or contain any specific factual basis giving rise to a fair probability that

8    contraband or evidence would be found on his person.").

9        Because there is no probable cause that evidence of the man's alleged crimes would be found in

10   "any vehicles," the search warrant is overbroad.

11              **B.      The electronics provisions is insufficiently particular and overbroad.**

12       The warrant also authorized the seizure and search of any computers, cellular phones, other

13   electronic media devices, and any electronic data storage devices "used in connection with identity

14   theft and counterfeiting," "for all user created files, including but limited to [sic] audio, video,

15   voicemail, text messages, SMS messages, call logs, pictures, notes, calendar, reminders, voice

16   memos, browser history, emails, sim card info, SSD card(s), user files, etc. from the period of August

17   14, 2019 to present." SW Attach. A ¶ 5, Attach. B ¶¶ 11, 12.

18       These provisions lack particularity and are fatally overbroad. The warrant authorizes the

19   seizure of computers, cellular phones, or other electronic media devices "used in connection with

20   identity theft and counterfeiting," but fails to provide any guidance to the executing officers regarding

21   how to determine whether the devices were "used in connection with identity theft and

22   counterfeiting." In a similar case, the Ninth Circuit held that a search warrant authorizing the search

23   for "any property or devices used or obtained through fraud operations" was "the epitome of a

24   general warrant" because it did not "limit the search to items readily identified with a particular

25   transaction" and did not provide "any other objective guidelines to limit the scope of the officers'

26   discretion." *United States v. Holzman*, 871 F.2d 1496, 1509 (9th Cir. 1989), *abrogated on other*

27   *grounds by Horton v. California*, 496 U.S. 128 (1990). And just as the *Holzman* warrant's specifying

28   that "the property must have been obtained through fraud is insufficient to rescue [it] from

1    overbreadth," *id.* at 1510, Singh's specifying that the electronics must have been "used in connection

2    with identity theft and counterfeiting" does not rescue the electronics provisions either.

3         Moreover, the electronics provisions allow "a general, exploratory rummaging," *SDI Future*

4    *Health, Inc.*, 568 F.3d at 705, of *all* files and *all* data on seized electronic devices for more than three

5    months. Although the provisions purport to allow searches only for "user created files," they are **not**

6    so limited because some of its examples – call logs, browser history, SIM card info, SSD card(s) –

7    are definitely *not* "user created files" and the list of examples is open-ended. SW Attach. B ¶ 12

8    ("including but limited to [sic] [examples], etc.").

9         The Ninth Circuit has made abundantly clear that "law enforcement and judicial officers must

10   be especially cognizant of privacy risks when drafting and executing search warrants for electronic

11   evidence." *United States v. Schesso*, 730 F.3d 1040, 1042 (9th Cir. 2013). Electronic devices and

12   services are "simultaneously offices and personal diaries," private, digital compartments that "contain

13   the most intimate details of our lives." *United States v. Cotterman*, 709 F.3d 952, 965 (9th Cir. 2013);

14   *see also Riley v. California*, 134 S. Ct. 2473, 2489 (2014) (search incident to arrest exception does

15   not extend to cell phones, which "differ in both a quantitative and a qualitative sense from other

16   objects that might be kept on an arrestee's person" owing to their "immense storage capacity" and

17   their ability to "contain[ ] in digital form" both "many sensitive records previously found in the

18   home" and "a broad array of private information never found in a home in any form—unless the

19   phone is"); *United States v. Payton*, 573 F.3d 859, 862 (9th Cir. 2009) ("Searches of computers . . .

20   often involve a degree of intrusiveness much greater in quantity, if not different in kind, from

21   searches of other containers.").

22        The search warrant here ignored all these admonitions. Most fundamentally, it failed to provide

23   any foundation that the man's alleged offenses had *any* nexus to electronic devices. Instead, the

24   warrant includes generalized language about "common practice[s]" of counterfeiters, mail thieves,

25   identity thieves, and their co-conspirators. *See* SW ¶¶ 12(a), (d)-(f).

26        Such boilerplate language cannot possibly be sufficient where, as here, the affidavit fails to

27   describe the alleged offenses. Take Singh's claim that "counterfeiters will often use computers or

28   other electronic devices to design counterfeit Money Orders." SW ¶ 12(a). But, as already explained,

the affidavit does not explain how Cory concluded that the five money orders were "counterfeit" and in what way they were "counterfeit." For instance, the affidavit does not claim that Cory inspected the five money orders and concluded they likely had been created using a computer, as opposed to money orders where the dollar amount was manually altered or money orders filled out with the name of someone other than the intended recipient. Without a factual basis to allow the conclusion that computers were involved in "counterfeiting" the five money orders, Singh's alleged claim of expertise is irrelevant. *See, e.g.*, *Cervantes*, 703 F.3d at 1139–40 ("While [an officer]'s training and experience are factors to be considered, 'it is incumbent upon the arresting or searching officer to explain the nature of his expertise or experience *and how it bears upon the facts which prompted the officer to arrest or search*.") (emphasis added; internal quotations omitted); *United States v. Mora*, 989 F.3d 794, 801-02 (10th Cir. 2021) (no probable cause to search home where the affiant stated, based on his training and experience, that alien smugglers often use electronic communication devices, GPS, and electronic banking systems to conduct operations and store records, but affidavit "does not identify facts showing that Defendant possessed, let alone used, any of the supposedly suspicious items in connection with alien smuggling"); *United States v. Weaver*, 99 F.3d 1372, 1379 (6th Cir. 1996) (affidavit did not support the issuance of search warrant for the Defendant's home because the affidavit's "combined boilerplate language and minimal handwritten information provide few, if any, particularized facts of an incriminating nature and little more than conclusory statements of affiant's belief that probable cause existed").

Singh's claims regarding the connection between mail and identity theft and electronics does not fare any better. *See* SW ¶¶ 12(d), (e) ("It is common practice for individuals involved in mail theft, access device fraud, and identity theft to use and maintain electronic devices. These individuals use such devices to store information about their fraud and identity theft crimes long after the crimes have been committed. . . . Mail and identity thieves often use electronic devices to perpetrate their crimes due to the relative anonymity gained by conducting financial transactions electronically on the Internet. These individuals employ electronic devices for purposes of, among other things: (1) applying online for fraudulent credit cards; (2) obtaining personal identifying information for the purpose of establishing or modifying fraudulent credit card accounts; (3) using fraudulently obtained

credit card to make purchases; (4) manufacturing counterfeit identification, credit cards, and checks; and (5) keeping records of their crimes."). Singh's lengthy explanation on the role of electronics in *credit card fraud* and the affidavit's failure to provide any foundational facts regarding mail theft or identity theft demonstrate that Singh's claims in the "expert" part of the affidavit were "rambling boilerplate recitations . . . not drafted with the facts of this case or this particular defendant in mind." *Weber*, 923 F.2d at 1345. Singh's claim that "[i]ndividuals who participate in these schemes communicate with co-conspirators by phone, text, email, and social media" is more of the same. As explained above, the affidavit fails to establish a conspiracy, let alone one in which the members communicated in the manner that Singh claimed. Lastly, if Singh's claim is that the money orders themselves were stolen from the mail or from another person, that would undermine the previous contention that evidence of counterfeit money orders would be found on an electronic device at the home.

The affidavit's shortcomings are compounded by its allowing the seizure and search of *all* files and data on *all* seized electronics for a period of over three months, with no other limitations. *Compare United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (search warrant authorizing seizure of defendant's entire computer system was not too general where probable cause existed as to entire system and warrant allowed seizure only of documents linked to a certain computer bulletin board system, used for child pornography); *United States v. Hay*, 231 F.3d 630, 637-38 (9th Cir. 2000) (search warrant authorizing search of defendant's entire computer system did not lack particularity where it only allowed a search for evidence of violations of sexual-exploitation-of-children statutes and for child pornography, "which is a sufficiently specific definition to focus the search"). Given the lack of factual detail regarding the "counterfeit" money orders and no evidence whatsoever of mail and identity theft and conspiracy, the affidavit simply does not establish probable cause that evidence would be found in *all* files and data. For instance, without probable cause of conspiracy, there is no basis whatsoever for seizing and searching voicemail, text messages, SMS messages, call logs, and emails. *See United States v. Opoku*, No. 4:20-CR-381, 2021 WL 3748260, at *6 (S.D. Tex. Aug. 23, 2021) ("The Court does not find the generalization that violent gang members "use their cell phones to communicate with others about the planning and execution of crimes"

1  sufficient to create a nexus with the cellphone's "call history," "emails," "contact information," and

2  "voicemails" . . . .").

3      In the end, the affidavit's authorization for law enforcement to rummage through *all* the files

4  and *all* data on *all* seized electronic devices rests on nothing more than Singh's claims of expertise,

5  but no facts whatsoever. Because "a general claim of expertise will not suffice," *Cervantes*, 703 F.3d

6  1135, 1140, the electronics provisions are fatally overbroad.

7      **C.    The provision allowing the seizure of "counterfeit money orders or Postal
           money order stock" is insufficiently particular.**
8

9      The search warrant also authorized the seizure of "[c]ounterfeit money orders or Postal money

10  order stock in any quantity." SW Attach. B ¶ 2. This provision lacks particularity.

11     Courts have long held that a search warrant description which uses a generalized term such as

12  "stolen property" is insufficiently specific. *See, e.g.*, 2 Wayne R. LaFave, SEARCH AND SEIZURE:

13  A TREATISE ON THE FOURTH AMENDMENT § 4.6(c) (6th ed. 2020) ("[A] warrant description

14  which does no more than refer to 'stolen property' is inadequate.")  (citing cases); *United States v.*

15  *Fuccillo*, 808 F.2d 173, 176-77 (1st Cir. 1987) (warrant authorizing seizure of "cartons of women's

16  clothing" invalid because it "contained no explanation as to how the executing agents were to

17  differentiate cartons of stolen women's clothing from legitimate goods"); *People v. Thompson*, 138

18  Cal. Rptr. 603, 604, 606-09 (Cal. App. 1977) (description authorizing search for "stolen property" not

19  sufficiently particular).

20     Like "stolen property," "counterfeit" money orders and "Postal money order stock" are

21  generalized, insufficiently specific terms. The warrant failed to set out any "objective standards by

22  which executing officers [could] differentiate" "counterfeit" money orders from non-counterfeit

23  money orders, or stock (presumably paper) from "Postal money order" stock. *Millender v. County of*

24  *Los Angeles*, 620 F.3d 1016, 1024 (9th Cir. 2010).

25     Unlike in other cases, the lack of specificity is not "cured" by the affidavit, which, as explained,

26  itself fails to explain how and why Cory or Singh concluded that the five money orders were

27  "counterfeit," nor did it provide any general background information on the different ways that

28  money orders can be "counterfeit." *Compare Hillyard*, 677 F.2d at 1341 (rejecting particularity

challenge where affidavit set "procedures to differentiate stolen vehicles from those legally owned," it explained "that vehicle alterations could be discovered by comparing secret identification numbers with those openly displayed, that true numbers could be checked with law enforcement computerized lists, and that some engine serial numbers could be checked with lists provided by sellers of heavy equipment," and "[t]he magistrate incorporated these guidelines into the search warrant by authorizing only a search of the vehicles and a seizure of those with altered or defaced identification numbers or those otherwise determined to be stolen.").

Finally, because Singh claimed training and experience (albeit limited) regarding investigating "counterfeit" money orders, SW ¶¶ 4, 12, and had access to the five money orders, he had no excuse for his failure to describe more particularly "counterfeit" money orders or "Postal money order stock." *See Millender*, 620 F.3d at 1024; *see also United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) ("Generic classifications in a warrant are only acceptable when a more precise description is not possible."). Any search for such property violated the Fourth Amendment.

### CONCLUSION

For the above-mentioned reasons, the Court should grant Mr. Powell's motion and suppress the evidence derived from the November 21, 2019, search warrant.


Dated:      November 23, 2021                    Respectfully submitted,

                                                 GEOFFREY HANSEN
                                                 Acting Federal Public Defender
                                                 Northern District of California


                                                                /S
                                                 SOPHIA WHITING
                                                 CARMEN SMARANDOIU
                                                 Assistant Federal Public Defenders