UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BENNIE POWELL, JR.,<br><br>Defendant. | Case No. 21-cr-00070-RS-1<br><br>**ORDER GRANTING MOTION TO SUPPRESS** |

## I. INTRODUCTION

Defendant Bennie Powell Jr. is charged with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). He moves to suppress all evidence gained from the search of a residence and the cars found at the location, arguing that the search warrant the government relied upon lacked probable cause, was insufficiently particular, and was overbroad. Dkt. 85. The government opposes this motion. No evidentiary hearing is necessary, because this motion does not turn on disputed facts, but rather an analysis of what information was included in the application for the search warrant and the affidavit supporting that application. As the issuance of the search warrant here was the result of "a mere ratification of the bare conclusions of others" as to whether the money orders in question were counterfeit or invalid, *Illinois v. Gates*, 462 U.S. 213, 239 (1983), probable cause did not support issuance of the warrant. For the reasons set forth below, the motion to suppress is

granted.[1]

## II. BACKGROUND

On November 22, 2019, U.S. Postal Service Inspectors and Vallejo Police Department officers executed a search warrant at 1001 Spyglass Parkway in Vallejo, California, where Powell lived.[2] The events leading up to the issuance and execution of the search warrant began on November 14, 2019. On that day, a person cashed five counterfeit or otherwise invalid U.S. Postal Service money orders at Westamerica Bank's Vallejo branch, in the amount of $1,000 per money order. On November 18, 2019, a Loss Investigator for Westamerica Bank emailed copies of these money orders, along with their serial numbers and images from the bank's surveillance footage of the person who cashed these orders, to Postal Inspector Tyler Sherman. The next day, Sherman learned from another Westamerica Bank Loss Inspector that someone else tried to cash money orders at Westamerica Bank's Fairfield branch, and the Loss Inspector believed this person was the same person engaging in fraudulent activity at the Vallejo branch. The Fairfield Loss Investigator emailed Sherman photos from the transactions at the Fairfield branch, along with information about the person's bank account application. The application stated that the person's name was Timothy Sears, he lived at 1001 Spyglass Parkway, Vallejo, CA 94591, had a Georgia driver's license, and worked at a barbershop.

Sherman reached out to the property manager of the complex that includes 1001 Spyglass Parkway, and the property manager identified the man shown in photos provided by Westamerica Bank as a person who lived at 1001 Spyglass. Sherman's research of postal indices confirmed that someone by the name of Timothy Sears was receiving mail at 1001 Spyglass.

On November 21, 2019, another Postal Inspector, Sukhdeep Singh, applied for a search warrant. The application stated that probable cause existed to believe that 1001 Spyglass was

---

[1] The government filed a motion for leave to file a sur-reply. Dkt. 92. Although the sur-reply is unnecessary for the Court's analysis, the motion for leave to file is granted.

[2] The facts in this section are drawn from the application for the search warrant, the affidavit accompanying the application, and the search warrant inventory.

being used to facilitate violations of five sections of the California Penal Code: § 496(a), Possession of Stolen Property; § 459, Burglary; § 530.5(a), Identity Theft; § 475(a), Forgery; and § 182(a)(1), Conspiracy to Commit Crimes. A California Superior Court judge issued a search warrant for 1001 Spyglass Parkway, along with any vehicles parked at the residence (including a white or silver BMW used to leave Westamerica Bank on November 14, 2019 and driven by the man believed to be Timothy Sears), the person believed to be Timothy Sears, and any computers, phones, or other electronic devices seized from 1001 Spyglass Parkway. When executing the warrant, officers seized—among other items—various IDs and credit cards, multiple cellphones, receipts from transactions at banks and other bank documents, and envelopes and money orders.

### III. LEGAL STANDARD

To issue a warrant, a magistrate judge must determine that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The reviewing court must "ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." *Id.* at 238-39 (internal quotation marks and citation omitted). When assessing whether probable cause exists to issue a search warrant, all information necessary to establish probable cause "must be contained within the four corners of a written affidavit given under oath." *United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006) (en banc) (internal quotation marks and citation omitted). "A magistrate's determination of probable cause will not be reversed absent a finding of clear error." *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993).

### IV. DISCUSSION

**A.  Whether probable cause existed to support issuance of the search warrant**

Probable cause must exist as to two distinct inquiries: (1) "that an offense has been committed" and (2) "that items related to that offense, such as fruits of the crime, will be found on the premises sought to be searched at the time the warrant is issued." *United States v. Rabe*, 848 F.2d 994, 997 (9th Cir. 1988). For the reasons explained below, the affidavit did not establish probable cause that an offense was committed, and thus it is not necessary to address the second prong, whether items related to the offense would be found at the premises sought to searched.

Powell argues there was no probable cause of any of the listed offenses—forgery, mail theft, possession of stolen property, identity theft, or conspiracy—having been committed. The government only responds to Powell's arguments concerning forgery and possession of stolen property, conceding "the affidavit contains a stronger factual basis for these offenses." Memorandum in Opposition, Dkt. 89 at pg. 4. Although the government states it believes probable cause was established as to the other offenses, the failure to provide any argument in support of those offenses creates a concession that no probable cause existed as to those offenses. *See Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859, 869 (N.D. Cal. 2012) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

"Conclusions of the affiant unsupported by underlying facts cannot be used to establish probable cause." *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (citing *United States v. Cervantes*, 703 F.3d 1135, 1139-40 (9th Cir. 2012)). "An affidavit must recite underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions; it is these facts that form the central basis of the probable cause determination." *Id.* Here, the failure to provide any facts in support of the conclusion the money orders were counterfeit or otherwise invalid means the application and affidavit did not support a finding of probable cause.

It appears the existence of probable cause as to either possession of stolen property or forgery, as defined by California Penal Code §§ 475(a), 496(a), is predicated on the money orders being counterfeit or invalid, and there are different ways in which a money order could be counterfeit or invalid that would implicate different offenses. The government explains the money order could have been invalid in the following ways: (1) "a 'counterfeiter' designed and printed money orders with made-up serial numbers"; (2) "the money orders were genuine U.S. Postal Service-issued money orders bearing real serial numbers that were stolen from the U.S. Postal Service" on which "someone forged the payment information . . . before cashing them"; or (3) the money orders were genuine money orders "stolen from the legitimate purchaser or recipient" before then forging payment information. Memorandum in Opposition, Dkt. 89 at pg. 7. The

government's argument that the invalidity of the money orders could have occurred in any of these ways points to the key failure of the affidavit: it provides no facts to explain how the money orders were invalid or counterfeit.[3]

The sections of the statement of probable cause the government points to as containing detailed information concerning the counterfeit or invalid status do not, upon close examination, actually contain facts that explain how any of the investigators or inspectors involved determined the money orders were invalid. There are no facts in the application and affidavit to explain why the money orders were "counterfeit" or "not valid." The statement of probable cause indicates that Cory, one of the Loss Investigators for Westamerica, "called the U.S. Postal Service Money Order Verification Unit and was told the Money Orders were not valid." Dkt. 86-1, pg. 9 ¶ 7. The affidavit also states that she "sent the serial numbers 26254673932, 26254673954, 26334006131, 26334006221, and 26334006074." *Id.* This second, statement, though, does not indicate that she provided those numbers to the Money Order Verification Unit when being told the Money Orders were not valid. Instead, this statement appears to correspond with the sentence in the same paragraph explaining that "Cory emailed 11 snapshot images of the subject from the bank surveillance footage, and copies of the five (5) counterfeit Money Orders in question to Inspector Sherman[,]" *id.*, as having "sent" the numbers better corresponds with the act of having "emailed" copies of the Money Orders, rather than having "called" the Money Order Verification Unit to discuss the money orders. Both the application's statement that the money orders were counterfeit, and the opinion from an unidentified member of the Money Order Verification Unit, are thus bare conclusions unsupported by independent facts.[4]

---

[3] Any number of facts could have supported the determination of probable cause as to the counterfeit or invalid nature of the money orders, including the following: whether the serial numbers were genuine or made-up; whether any payment information or numbers appeared to be forged, and if yes what indications of forgery were present; whether the money orders displayed any differences from genuine money orders, indicating a counterfeit document; and if the serial numbers were genuine, whether they had previously been reported as stolen. None of this information, nor any other information that would be used to assess whether a money order was counterfeit or otherwise invalid, was present in the warrant application.

[4] The government spends considerable time arguing that Loss Investigator Cory is a "citizen

1    Here, the state judge's conclusion that probable cause supported the warrant was a "mere

2    ratification of the bare conclusion of others," *Gates*, 462 U.S. at 239, because there were no facts

3    provided through which the judge could assess the conclusions that the money orders were

4    counterfeit. The Ninth Circuit has held that similar conclusory statements are not enough to

5    establish probable cause. *See Underwood*, 725 F.3d at 1081 (explaining that the statement

6    "[b]ased on other seizures in this investigation, I believe the crates contained approximately

7    260,000 pills of MDMA," was conclusory because the affidavit provided no explanation of the

8    other seizures in the investigation, and how those seizures would tend to show that the two crates

9    in question would likely contain MDMA); *see also Cervantes*, 703 F.3d at 1139-40 (explaining

10   the statement that a home was a "suspected narcotics stash house," without providing any facts to

11   support such a conclusion, did not suffice to establish probable cause despite a "general claim of

12   expertise" from the affiant). The out-of-circuit cases the government cites in support of its

13   proposition that no further facts are needed to establish probable cause are inapposite; indeed,

14   none of them address a situation in which the defendant challenged as conclusory the

15   identification of money or a money order as counterfeit. *See United States v. Carney*, 675 F.3d

16   1007 (6th Cir. 2012); *United States v. Duegaw*, 150 F. Appx. 803 (10th Cir. 2005); *Rice v. United

17   States*, 134 F. Appx. 839 (6th Cir. 2005). Further, the Sixth Circuit applies a different standard

18   than the Ninth Circuit in assessing whether an affidavit is conclusory. *See United States v. Finch*,

19   998 F.2d 349, 352 (6th Cir. 1993) (defining a conclusory affidavit as one that only states the

20   affiant's belief probable cause existed).

21   Without facts supporting the conclusion that the money orders were counterfeit or invalid,

22   the judge could not "draw his or her own reasonable inferences and conclusions," which is the

---

informant" entitled to credibility, and the conclusions of the Money Order Verification Unit are entitled to heightened deference, as the Postal Service is a government unit. Any credibility afforded to the conclusions of Cory or the Verification Unit, though, still misses the key deficiency of the affidavit: the affidavit contained conclusions without any facts to support those conclusions. The addition of conclusions by other individuals or entities, no matter how "credible," does not cure the deficiency of facts in the affidavit.

ORDER GRANTING MOTION TO SUPPRESS
CASE NO. 21-cr-00070-RS-1

6

1  "central basis of the probable cause determination." *Underwood*, 725 F.3d at 1081. As the
2  affidavit did not establish probable cause as to forgery or possession of stolen property, and the
3  government conceded there was not probable cause to support the other offenses listed in the
4  search warrant, no probable cause existed to issue the warrant.

### B. Whether suppression is warranted

The government argues that even if probable cause did not support the search warrant, suppression is not warranted because the officers acted in good faith. The exclusionary rule does not apply to "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant[,]" but this exception does not mean that "exclusion is always inappropriate[.]" *United States v. Leon*, 468 U.S. 897, 922 (1984). "[T]he officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id.* at 922-23 (internal citation omitted). Among the situations when an officer would have no reasonable grounds for believing the warrant was properly issued is when the "warrant [is] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (internal quotation marks and citation omitted).

In *Underwood*, the Ninth Circuit held that "when the affidavit *itself* lacks indicia of probable cause, simply looking at the affidavit would be sufficient to alert any reasonable officer that probable cause does not exist." 725 F.3d at 1087. Further, "[r]eliance upon a bare bones affidavit is never reasonable." *Id.* Like in *Underwood*, the affidavit here relied on conclusory statements without factual support, making it a bare bones affidavit as to a key inquiry: whether the money orders were counterfeit or invalid. As such, reliance on the affidavit was unreasonable. The only argument that the government provides for its argument that the warrant was not so lacking in indicia of probable cause simply repeats its argument that probable cause existed, citing to "the detailed information that Postal Inspector Singh provided in his affidavit." Memorandum in Opposition, Dkt. 89 at pg. 21. As explained before, though, the affidavit is utterly lacking in

"detailed information" to establish the money orders were counterfeit or otherwise invalid. As it was unreasonable to rely on the search warrant, the good faith exception to the exclusionary rule does not apply.

## V. CONCLUSION

For all the foregoing reasons, the motion to suppress is granted. As there was no probable cause to support issuance of the warrant, it is unnecessary to address Powell's arguments that certain aspects of the warrant were overbroad or not sufficiently particular. All evidence gained from the search authorized by the search warrant is hereby suppressed.

**IT IS SO ORDERED**.

Dated: January 6, 2022

_____
RICHARD SEEBORG
Chief United States District Judge